ALEXANDER C. Mc WHORTER and FRANCES his wife, WILLIAM S. PENNINGTON, and HUMPHREY HOWLAND,

v.

EGBERT BENSON, JOHN M. D. LAWRENCE, WILLIAM A. G. THOMPSON and MARY his wife, SAMUEL BOYD, GABRIEL V. LUDLOW, GEORGE W. HAWKES and ANN his wife, ELIZABETH LAWRENCE, GEORGE H. Mc WHORTER and MARGARET his wife.

An executor is entitled, in the settlement of his accounts to be allowed the reasonable charges paid by him to an agent employed in the management of the estate of which he is executor, if the circumstances of the estate rendered the employment of such agent proper and justifiable : and that, whether the employment of an agent is authorised by the will or not.

Before the act of 15th of April 1817, an executor was not entitled to any compensation for his services. That act authorises this court to make an allowance to executors for their services, according to a fixed rate, and to fix that rate ; but does not authorise the court to make special allowances without regard to a fixed rule or rate.

1823.
Nov. 6, 7, 8.

Executor's
compensation.

JOHN LAWRENCE late of the city of New-York, esquire, being possessed of a large real and personal estate, on the 9th of November 1810, made his last will and testament, by which after sundry devises, he authorised his executors to lease, mortgage, or sell his real estate. The will then contained the following clause.

" Lastly, I appoint my brother-in-law, William Tilgh-
" man, of the city of Philadelphia, and my friends, Egbert
" Benson, Matthew Clarkson, and Egbert Benson junior,
" of the city of New-York, my executors and trustees, for my
" daughters Mary and Ann, as above intended ; and also
" guardians of my children under age. And I further author-
" ise them to appoint a person as an agent under them, in

" their capacities both as trustees and executors, to have the
" charge and management of my said estate : and for whose
" defaults they shall not be liable ; and to whom they may
" make such compensation for his services in the said agen-
" cy as they shall judge reasonable ; and for the greater cau-
" tion, I declare, that all the trusts and authorities aforesaid,
" may be executed by such of my executors as shall prove
" my will, and the major part of them, and the survivor of
" them.    And further, that such agent may be one of them-
" selves."

After the death of the testator, the defendant Egbert Ben-
son, alone proved the will, the other executors having declin-
ed to act.

The defendant Egbert Benson, acting as executor, first ap-
pointed Thomas Cooper, since deceased, as agent, and after-
wards appointed the defendants John Mc Dougall Lawrence
and William A. G. Thompson, joint agents under himself, the
executor, in pursuance of the power in the will.    Subsequent-
ly revoking that appointment, he conferred the same agency
on the defendant Samuel Boyd, and, again revoking this last
appointment, he appointed the defendant Gabriel V. Ludlow,
agent, who continued in that capacity at the time of filing the
bill.

The complainant Frances, being one of the daughters and
legatees of the testator, the bill was filed by Alexander C.
Mc Whorter and herself in that right, and by the complain-
ants Pennington and Howland as her trustees, under a mar-
riage settlement, for a general account and settlement of the
estate.    The bill called for accounts against the defendant
Benson, and his several agents, and stated particularly the
objections of the complainants to certain amounts of money
charged and retained by them as commissions, or compensa-
tion for services.

All the defendants having answered, the cause had former-
ly come to a hearing, when the court referred it to a master
to take a general account of the estate, and the administration
of it.    " And with respect to the sums of money retained or
" obtained out of the estate of the said testator, by the de-
" fendants, or any of them, as commissions, or compensa-

" tion for services, as the complainants object thereto, it is " further ordered, that the master take an account thereof, and " the manner in which the said commissions or compensa- " tions have been allowed, or liquidated with the defendant " Egbert Benson, if allowed or liquidated by him, and report " the same to the court, with the evidence, and his opinion " thereon, for the consideration and judgment of this court."

On this head of commissions the master Mr. Bolton, re- ported very particularly, as directed, with regard to the com- missions allowed to Mr. Boyd. It appeared, from the testi- mony of Robert Troup, taken before the master, that he, Col. Troup, had warmly solicited Mr. Boyd to accept the agency; that Mr. Boyd had consulted him as to the commis- sions which he ought to charge; that Col. Troup had suggest- ed $2\frac{1}{2}$ per cent. as charged by Mr. Boyd; that in the wit- ness's opinion, that charge was reasonable; that Col. Troup allowed as much, and in some instances more to sub-agents employed by himself; and that the witness would not have undertaken it for less than 5 per cent.

Upon this the master reported, " Under the circumstances " of this case, and inasmuch as the defendant Egbert Ben- " son, the acting executor, by virtue of the power and autho- " rity given to him in and by the last will and testament of " the said John Lawrence deceased, has examined into, and " approved of the accounts of the defendant Samuel Boyd, " and has officially and in good faith passed upon, and set- " tled the commissions as charged by him, I am of opinion " that the same is binding upon the parties interested, and " that said commissions ought to be allowed, and I have al- " lowed the same accordingly."

The master then went on to state the nature of the services of the defendant Egbert Benson, upon which he reported as follows: " And I do further report, that I have also allowed " to the defendant Egbert Benson, the sum of $1500, charg- " ed by him, as a compensation for his services rendered to " this estate; which charge is made by him in lieu of all " commissions under the act of the legislature of this state, " and the rule of this court, made in pursuance of said act."

To this report the complainants filed exceptions, viz. 1st,

to the allowance of $1500, as a gross sum for the services of 1823.
Egbert Benson : 2nd, to the allowance to Samuel Boyd of 2½ McWhorter
per cent. on receiving, and 2½ per cent. on paying ; because v.
the reason alleged by the master for that allowance is not suf- Benson.
cient ; because the allowance is extravagant ; and because Sa-
muel Boyd had submitted to account generally, and waived
the benefit of any adjustment with the executor, under which
he might have claimed a protection : 3d, to the allowance to
Mr. Boyd, of a counsel fee of $100 : 4th exception ; because,
if Samuel Boyd is protected from accounting by any act of
Egbert Benson, then the latter should be held to account in
his place

The defendant Elizabeth Lawrence, with certain other de-
fendants, also filed an exception to the report, on the ground
that Mr. Benson, as sole acting executor, had not the right
to appoint Mr. Boyd agent.

These exceptions now came on to be argued.

Mr. Warner for the complainants. The will makes no
provision for compensation to executors. It allows a reason-
able compensation to agents ; but that is provided for actual
and active care and labour only. That Mr. Benson's actual
expenses are to be allowed is not disputed ; and the allow-
ance here claimed is before the statute of 15th April 1817.
And though it was admitted before the master, that he travel-
led &c., yet this was a service subordinate to the agent, and
such as he was not bound to perform. The testator could
never have intended that compensation should be allowed to
two sets of agents at the same time.

Mr. Boyd is allowed his commission upon the gross amount
of large mortgages received and paid on the same day, and
upon the whole value of the mortgaged property, though in
effect, nothing is sold but the equity of redemption ; the rest
is supposititious. The commissions should be upon the ex-
cess only, beyond the mortgages. They are also allowed
upon payments to himself, and upon balances received from,
and paid to the executor and other agents. The allowance
should only be upon actual, not formal payments. Mr. Boyd
offers to account, without insisting upon the adjustment made
by Mr. Benson, as conclusive.

1823.          Mr. Emmet on behalf of the defendants Elizabeth Law-
McWhorter     rence and others with her, also offered their exception, which
    v.        was objected to, on the ground that a co-defendant can not
  Benson.     take an exception.    Mr. Emmet answered, that in taking an
account, all parties are actors, and each entitled to be heard
according to his interest; and if the bill omits any averment
material to any defendant, he ought not to suffer by the omis-
sion.

In this case the defendants have never admitted that Mr.
Boyd was duly appointed.   The power to appoint an agent
is by the will conferred on " them," the executors in the plu-
ral.   The " major part" of those who prove the will may
act.   There must be two at least; and Mr. Benson alone had
no power to appoint an agent.

The consideration of this exception was reserved.

Mr. Boyd for the other defendants.   An executor has a
general power to appoint agents, independent of any express
authority.

The master's report shows the circumstances under which
Mr. Boyd accepted this agency; and the letter-books and
papers produced, showed the variety and extent of the trans-
actions.   There were six or seven sub-agencies, a great es-
tate to settle, and many journeys to be made by Mr. Benson,
for the benefit of the estate, and to superintend its distant con-
cerns.

Mr. Jones on the same side, opposed the construction put
forward by Mr. Emmet, and cited W. Jones, 352.; Cro. Car.
382.; 1 Jenk. Cent. 44.; 3 Binney, 69.; 14 Johns. 527.;
Sugden on Powers, 141.; and he applied these authorities to
a very full and detailed examination of the doctrines regard-
ing the powers of executors, whether simply as such, or
when further empowered to sell &c.

The act of 15th April, 1817, 40th sess. chap. 251, is gen-
eral in its terms, and applies to all cases, past as well as sub-
sequent.   There is a moral obligation to make compensation
in these cases, which is generally felt and acknowledged; and
the act has, in its reason and intent, no special relation to
subsequent services.   It gives no new right.

" It shall be lawful for the court, &c.".   The court may

do this by a general order; but till it does so, it may regulate special cases by their circumstances, and a special order will not exhaust the power of the court. It is a power both to make an allowance in each case, and also to establish a general rule.

The rule hitherto made is partial, and only applies to receipts and payments, which are but a small part of the subject. The rest of the power is open to the court, and embraces services of all kinds, other than for receipts and payments. It embraces care, counsel, labour, journeys, &c. which admit of no rule nor measure. For these, the late chancellor allowed special compensations; and unless that be done, the duties in question must remain, in a great measure, unexecuted.

Here Mr. Benson the executor, is allowed no expense, except for the journeys which he took, during his active service of three years. He has nothing for commissions upon all the payments and receipts for the estate; nothing for his responsibilities incurred in various ways, and especially in drawing and endorsing negotiable paper for the benefit of the estate, and till the debts could be paid. Who superintended the subagents? Who appointed and displaced them? Who executed all the deeds and conveyances for the sale of a vast real property? For all these services, Mr. Benson's only compensation is the gross sum of fifteen hundred dollars.

Mr. Warner in reply, insisted that no rule can be safely adopted beyond that acted on by the late chancellor. There can be no measure for " services," sufficiently certain to be adopted. A per diem allowance would be least dangerous; but there can be no check upon the time charged, and an allowance for journeys would lead to vast abuses.

Trustees guardians and executors are generally relatives, friends, or " next of kin." Their services are usually bestowed from motives of kindness; and to make those services a matter of gain, is to sanction a profane mixture of sordid and benevolent motives.

Mr. Emmet for the complainants, in reply, examined the cases and principles alleged by Mr. Jones, and cited Sugden on Powers, 160.; 15 H. 7. 11. b.; 2 Leon. 220. pl. 276. ;

1823.    Dyer, 371. b. pl. 3. ; 1 Chan. Ca. 176. 180., as to a power
McWHORTER  to sell being raised by implication, and its difference in this
v.      respect from all other powers.   The executors who did not
BENSON.   act, might have joined in the appointment of an agent; Sug-
den on Pow. 165. 631. 634.; 15 H. 7. 11. b.; and they
might be compelled, in equity, to execute that trust.

This imperfect sketch of the argument is intended to go
no farther than is supposed useful, for a more full understand-
ing of the chancellor's opinion.   It would require a much
longer, and more detailed report, to present a competent
view of the able and elaborate arguments of the counsel.

THE CHANCELLOR.   The charges of the defendant Boyd,
for his services as agent, were adjusted and allowed by his
constituent, the defendant Benson.   This settlement may pro-
tect Boyd, though it can not protect Benson, against the
claims of the complainants; but as my opinion is founded on
reasons independent of this settlement, I shall not discuss its
effect.

An agent    It also seems unnecessary, to determine, whether Boyd was
appointed by
an executor, an agent under the will, or not.   If he was appointed in virtue
is equally en-
titled to com- of the special authority given in the will to appoint an agent,
pensation for he is, by the terms of the will, entitled to such compensation
his services
whether the for his services, as the executors shall judge reasonable.   If
will,did or did
not, specially he was appointed in virtue of the general power, which every
authorize the
appointment. person has, to act by an agent, he is also entitled to a reason-
able compensation for his services.   In respect to Benson, the
executor, he cannot charge the estate with the expense of an
agency, unless the will gave an authority to that effect, or un-
less the circumstances of the case, rendered it proper that he
And if so
authorized,or should employ an agent.   If he employed an agent without
if otherwise
proper, the the authority of the will, he was responsible for the acts of his
expenses of agent; but if the intervention of an agent was proper and jus-
the agency
must be borne tifiable, for the benefit of the estate, the expenses of such an
by the estate.
agency, must be borne by the estate.   The appointment of an
agent in this case, was entirely proper.   The incumbered and
perplexed situation of this great estate, rendered it fit and in-
deed necessary, that the executor should act by others, to a
great extent; and all reasonable disbursements to an agent

employed in good faith, for purposes important and beneficial to the estate, must be allowed, as well against the estate, as against the executor appointing the agent. If then, the charges of Boyd allowed by the master, are reasonable and just, they must be allowed not only to him, against Benson; but also to Benson, against the estate of Lawrence.

Boyd is entitled to a just compensation; and that compensation must be measured by the nature extent and value of his services. No sum or principle of compensation was stipulated by contract; and the case is not governed by any legal rate of allowance. The amount of compensation must be assessed by good discretion, in regard to all the circumstances of the case.

*There is no fixed rate of allowance for the agent.*

The commissions allowed to Boyd, are the chief subject of objection to his account. These commissions are charged and allowed, not merely as a compensation for receiving and paying money, but as compensation for his services as the agent of the executor, in conducting the affairs of the estate, and for selling parcels of the estate. Commissions are here stated and allowed, as a measure of estimating the reward due to all the services of the agent. The real extent of his services does not clearly appear; but from the facts which appear and the nature of the case, those services must have given much employment to the agent, and must have been very beneficial to the estate. The time and labor actually employed by the agent, in these services was necessarily considerable; in many of these transactions, his responsibility was not small; in many of them his professional knowledge must have been very useful; and in all, his trust was performed with acknowledged fidelity. The compensation charged by the agent and allowed by the executor and the master, presents nothing exorbitant; every thing has been done in good faith, by both Benson and Boyd; the estate has had much benefit from these services; and upon the whole case, I do not perceive that these allowances are unreasonable or unjust.

I therefore concur with the master, in respect to these allowances; and consequently, the second, third and fourth exceptions to his report, are disallowed.

The master has allowed to the defendant Benson, one

1823.         thousand five hundred dollars ; and this allowance is stated
              to be "the sum charged by Benson, as a compensation for his
McWhorter     " services rendered to this estate ; which charge is made by
    v.        " him, in lieu of all commissions, under the act of the legisla-
Benson.       " ture and the rule of this court, made in pursuance of that
              " act." This allowance is now claimed by the executor, and
              is opposed by the complainants.

The act of        Before the act of the fifteenth of April 1817, an executor
1817.–Before
that act, an  was not entitled to any compensation for his services, in the
executor was
not entitled to discharge of his trust. By that statute, it is enacted, that it
any allow-
ance.         shall be lawful for the court of chancery, in the settlement of
              the accounts of guardians, executors and administrators, on
              petition or otherwise, to make a reasonable allowance to them
              for their services as such guardians executors and adminis-
              trators, over and above their expenses ; and that when the
              rate of such allowance shall have been settled by the chancel-
              lor, it shall be conformed to in all cases of the settlement of such
              accounts.

The rule of       By a rule of this court, of the sixteenth of October 1817,
court. of Oc-
tober 1817.   it was ordered, that the allowance settled by the chancellor, as
It is the only
regulation    a compensation for guardians executors and administrators,
made by the
court.        in the settlement of their accounts, under the act of the legis-
              lature, for receiving and paying money, shall be five per
              centum, on all sums not exceeding one thousand dollars, for
              receiving and paying out the same ; two and a half per cen-
              tum, on any excess between one and five thousand dollars, and
              one per centum for all above five thousand dollars. No other
              regulation upon this subject, has been made by this court.

              It is only under this statute, that an executor can claim any
              reward for his services ; and the true meaning of this new,
              law, must be ascertained.

              The statute consists of two principal clauses. The first,
              authorises this court to make a reasonable allowance to guar-
              dians executors and administrators, for their services. These
              terms are clear ; and they regulate the compensation in no
              other manner, than to require, that it shall be reasonable. If
              this principle alone, had been the object of the law, the provi-
              sion was complete, in the first clause ; nothing more was ne-
              cessary, and nothing more would have been enacted. Every

executor might then, have claimed compensation for all his services; and the allowance must have been reasonable, according to the circumstances of each case.

But the last clause of the statute, provides, that when the rate of such allowance, shall have been settled by the chancellor, it shall be conformed to in all cases. These terms are fully coextensive with the preceding provision. " Such allowance," plainly comprehends the reasonable allowance, and every allowance mentioned in the first clause. The term " rate," is certain, in its sense; the term " settled," conveys precisely and strongly, the idea of a rule; and the words, " the rate of such allowance when settled," taken together, show clearly, that a fixed rule was the object of the law. The application and extent intended to be given to such a rule, are clearly shown by the concluding words of the clause, which declare, that the rate of such allowance when settled, " shall be conformed to in all cases :" and the cases here intended, are evidently, all the cases, in which by the preceding provision, any allowance is to be made. According to the sense of all these terms, the second clause of the statute, embraces all the cases mentioned in the preceding provision.

The statute therefore, gives power to this court, to make allowances by settling rates, a power to establish rates and to allow according to such rates; and it does not authorise the court to make special allowances, without regard to rule or rate.

*The statute gives power to this court, to make and establish rates of allowance, and to allow accordingly. It does not authorise special allowances.*

This construction is denied. It is said, that the statute not only authorises the court to establish rates of allowance, but also to make allowances without a rate; that so far as rates are established, they must govern, and that all services for which rates are not provided, must be rewarded by special allowances. This interpretation may be specious, but in my opinion, it is not the true sense of the law.

To give to this court power to act upon the same subject, by rule and without rule, power to allow to the same executor, a part of his compensation, according to a fixed rate, and another part, according to a discretionary valuation of his services, would be at least, a singular provision. The advantages of a fixed rate of allowance, are obvious. Such a rate has the ef-

*1823.*

*McWhorter v. Benson.*

1823.

McWhorter
v.
Benson.

fect of law; it is known and uniform; it governs all cases; and it renders litigation unnecessary. These benefits the legislature intended to secure, by the provision concerning a rate of allowance; but these objects would be frustrated, if every case were open to a claim for discretionary compensation. If a part of the reward of an executor, is assessed by discretion, and another part is ascertained by a settled rule, there is little utility, in any rule concerning a part of his services; since the discretionary allowance for all other services, is not only subject to all the inconvenience of a special adjustment in each case, but will also in general, produce as high a compensation to the executor for all his services, as if all had been measured, merely by the merit of his particular case.

This effect is exemplified in the present case. The defendant Benson has charged and the master has allowed, a gross sum for all the services of Benson as executor, in lieu of the allowance made by the rule of the court, under the statute. The services of this executor, like those of other executors, consisted partly, in receipts and payments of money, and partly, in other acts. If the allowance for receiving and paying money, and the allowance for other services, had been given in separate statements, the aggregate of the two statements, would I presume, have been the total sum which the master has allowed. The rate of allowance, established by the rule of the court, thus becomes almost useless, if the executor may claim compensation, without regard to that rate; and it is equally so, whether his compensation is stated to be, as in this case, for all his services, and instead of that allowed by the rule, or is stated partly under the rule, and partly by some other mode of estimation.

The provision that the rate of allowance settled by the chancellor, shall be conformed to, in all cases of the settlement of such accounts, is a clear explanation of the meaning of the whole law. The legislature here, evidently mean, not to produce litigation, but to prevent it. They mean, that the settled rate of allowance, shall be a rule, which shall prevail, not only in the court of chancery, but also before surrogates and in all other courts, in which such accounts may be settled; and above all, they mean, that the rate of allow-

The allowance when settled, is to be a known rule, and must prevail in all courts.

ance, shall be a known rule, by which all parties may adjust such accounts, without resorting to any court, to determine the amount of an uncertain claim for compensation. This great object of the law, cannot be attained, if the compensation is not confined to allowances made by an established rate.

If these plain provisions and these views of their meaning, do not determine the true sense of this law, farther illustration may be found, in more general views, in the nature of the subject, and in the operation of different plans proposed for making these compensations.

When it is proposed, that all services of guardians executors and administrators, shall be compensated by one uniform rule, the objection made to this method, is, that it does not provide equitably, for different cases, and does not reach the exact justice of each case. This objection is answered by the statute itself, which does not promise or propose to attain the exact justice of each case; but proposes only, so much justice, as may be attained by a rate of compensation. But let the project of special rewards by a discretionary assessment in each case, be considered, without reference to the statute. What is to be assessed? 'The value of the services of an executor administrator or guardian. The intrinsic or moral merit of such services, depends on an endless variety of circumstances, and also greatly, on opinion. The real labor of the trust. ., is not easily ascertained; and when it is ascertained, is not easily valued. But in general, the personal labor of these trustees, is not great. In general, vigilance and fidelity are the most important requisites, in these trusts. Sometimes, high talents and great zeal may be exerted, in the service of an estate or a ward. A guardian may be a parent to his ward, in education, in kindness, in salutary counsel and moral control; or while these duties are partially discharged or wholly neglected, he may preserve the property of his ward, with entire fidelity. Each guardian, each executor and each administrator, discharges his trust, with more or less assiduity activity and exertion on his own part, and with more or less benefit to those, whose interests are committed to his charge. In any of these cases, how is the reasonable compensation to be ascertained? Is the trustee to be paid for his services, with-

out regard to their results ? or only for those which have proved beneficial ? Is the reward to depend on service performed, or on benefits received ? or on the good motives which may have prompted fruitless labours ? Services performed by one trustee, may be far more valuable than like services performed by another, if the respective services are measured by the rewards of industry, which the respective trustees might earn, in their private pursuits. The trustee may sustain actual losses in his private interests, by his attention to the duties of his trust ; and are these to be compensated ? Are the economy the vigilance and the zeal of the trustee, to be estimated and rewarded ? Are his mental and moral qualities to be assessed, in assessing his compensation ? Is a guardian to receive compensation for his cares, in respect to the person of his ward ? By what principle shall their value be estimated ? are the sacred nature of these trusts, the confidence which they imply, and their moral duty, to be considered as they have been sometimes viewed, as reasons for depriving the trustee of reward ? or are they to be regarded, as reasons enhancing his claim for compensation ? Is the entire administration of a guardian executor or administrator to be taken into view ? and when all his conduct, and all its consequences, have been reviewed, is it to be pronounced, that his just deserts are equivalent to a certain sum of money ? In all this uncertainty, one case affords no rule and hardly an analogy for another ; the estimate is open to every species of claim, to every theory of justice, and to every consideration which may have influence on the result ; and the result is determined by mere opinion. It is evident, that all attempts to assess the value of services performed in these trusts, by placing each case upon its peculiar circumstances and intrinsic merit, must terminate in a power of mere discretion, of discretion to a great extent, merely arbitrary. This mode of assessment, would be so extremely uncertain in its operation, that it would frequently defeat the very justice which it proposes to attain ; and its certain effect would be, to produce extensive litigation, in adjusting the rewards of executors administrators and guardians. The plan of indefinite and discretionary rewards, must therefore be rejected, not only as inconsistent with the statute,

but also as pregnant with mischiefs which render it wholly ineligible in itself; and the subject of compensation, must be governed by some rule, which shall secure certainty while it affords justice.

To avoid the objections made to a uniform rule, it has been proposed, to establish several rates of compensation for different classes of service. The services of guardians executors and administrators, are various; and it would be very difficult, if not impossible, to classify all these services, into kinds or divisions, with any precision. If these services were distinguished into several kinds, the adjustment of a reasonable rate for each kind of service, would be a matter of great difficulty; and the general effects of many different rates, would be, to perplex the subject of compensation, with questions concerning the nature of the services performed, and to produce in most cases, an amount of compensation, not more equitable, than one which might be derived from a single rate of allowance for the whole. The project of several rates of compensation, is also inconsistent with the statute itself; which authorises an allowance and a rate of allowance for services, in terms sufficiently showing that the legislature did not regard the subject of services, as divisible into portions, or susceptible of distinct rates of allowance.

It has also been proposed, to make the compensation depend upon time, by making an allowance for each day, employed in the business of the trust. This would indeed be a universal rule, embracing all services; but the principle would be most pernicious. No rule could be more dangerous, than that which should declare, that every guardian executor and administrator shall receive a daily allowance for time employed in his trust. Much of the utility of these trusts, always consists in attention, superintendence, fidelity and economy; and cares and services like these, cannot be measured with any exactness, by days or months. The duties of these trusts, do not in general, require entire days of attention; but they are usually performed, as occasion may require, with little or no interruption of the private pursuits of the trustee. The injustice of allowing daily wages; the temptation to abuse which would be offered by such a rule; and the difficulty of preventing

1823.

McWHORTER
v.
BENSON.

abuses in its execution; are decisive objections to its adoption. If we regard the duration of these trusts, this fact affords no rule of compensation. One of these trusts, continuing five years, may be far more arduous and may require much greater services, than another extending to fifteen years, for its entire execution. The idea of compensation measured merely by time, must therefore be rejected.

Dismissing all schemes which are inconsistent with this law, and all others which if authorised under the power given to this court, are futile, impracticable or unjust, we must find, what the statute authorises and requires, a reasonable principle of compensation for these services. Such a principle, to execute the intention of the law, must be one rate for all the services of all guardians executors and administrators; a uniform rule for all cases, without distinction between the different trusts or different services of an executor an administrator or a guardian.

These cases are susceptible of such a rule. The amount of property, confided to an executor administrator or guardian, and passing through his hands, is a basis, upon which his reward may be easily computed. The custody and care of the estate, are his duty; and his services in general, bear a just proportion to the amount of the estate. Though the value of his services, may not be in exact proportion to the value of the estate, yet in the general course of these affairs, the amount of the estate, indicates with sufficient exactness, the extent of his labors, cares and services, and their reasonable value. Thus, a plain rule of calculation, is afforded by the amount of the property held in trust; a rule which is comprehensive as well as simple; and which in all ordinary cases, is a very just criterion of the reasonable value of the services of the trustee. This rule is recommended by its absolute certainty, its intrinsic propriety, its adoption in other states in which compensation is allowed to these trustees, its analogy to compensations made to other trustees and agents who have the care of property, and by the justice which it will generally afford to an executor administrator or guardian. Whatever may be the weight of objections made to this prinple, all other plans of compensation are exposed to far great-

er evils. If this method does not reach the abstract point of moral justice in each case, it is because human methods are imperfect; and here, as in so many other cases, we are obliged to abandon the vain search for a perfect method, and to be content with the general results of an absolute rule.

The trusts of an executor administrator and guardian, differ widely from all other trusts and all other agencies. They are trusts for the dead; and they are also trusts for the living who are incompetent to act for themselves, or to watch over their own rights. Each one of these trustees, has great powers and great latitude of discretion. He determines what shall be done; and he performs the service, without direction from any constituent, and without the control and vigilance, which other principals hold over other agents. It is required by the most obvious policy, that these trusts should never become lucrative occupations. A reasonable compensation governed by a fixed rule, may be demanded by justice, and seems to be the precise object of this law. But that every executor administrator and guardian should be rewarded from the estate in his hands, for all his services whatever they may be; and that his reward should be determined by the principles which would prevail between an ordinary factor and his constituent, would be a most pernicious doctrine. If such a doctrine were law, then would these trusts become occupations inviting for gain, and mischiefs the most serious would ensue. There is no reason to believe, that the legislature intended to adopt such a principle. If justice demands something, policy forbids much: and the safe as well as the obvious construction of this law, is, that so far as reasonable compensation can be made by a fixed rule, so far only, it shall be allowed. These trusts are always voluntarily assumed; and no executor administrator or guardian can complain, that his compensation is inadequate, when he may accept the trust or not, in his own pleasure, when he knows that his reward is limited, and when policy and morality forbid, that he should derive profit from such an employment.

All proper expenses are always allowed to executors administrators and guardians. When they act by others, for proper objects and in good faith, the compensations of agency and

All proper expenses are always allowed to executors, &c.

1823.

McWHORTER
v.
BENSON.

all just disbursements, are allowed in their accounts. Where the business of these trusts is difficult, much of it is usually done by the agency or with the aid of others; and when just compensation is made to them, the estate indeed bears the expense; but it becomes a charge, in a way not liable to any dangerous abuse. By the allowance of just disbursements, the trustee has full indemnity against actual loss; and by the additional allowance of a compensation so regulated, that it may be free from excess and abuse, all other claims of justice are satisfied.

The principle which best reconciles policy with justice, and both with the provisions of this law, accordingly is, that the compensation for all the services, of these trustees, shall be measured by the payments of the trustee, ascertained at the close of his trust. By this principle, the rewards of the trustee, depend upon his payments. So far as the trustee may feel the desire of gain, this principle is an incentive to fidelity, prompting him, not only to collect and preserve the estate, but also to apply it faithfully, and to persevere in his duty, even to the last act. It is only when the accounts of an executor administrator or guardian, are settled, that he can claim any compensation. Then, the whole trust ceases; and if the trustee has faithfully paid or is ready to pay, all the moneys which he has received, his fidelity and the measure of his reward, then appear. With great reason therefore, the statute provides that the rate of allowance, shall prevail and the allowance itself be made, in the settlement of such accounts.

The allowance settled by the late chancellor, has been represented, as providing compensation for the receipt and payment of money, and for no other service; and it is then said, that as the power of the court to make an allowance for other services, is unexecuted, such an allowance must now be made. The court has no power to make an allowance, without regard to a rate. It is empowered to act upon this subject, on petition or otherwise; and the statute might be executed either by an order in a particular case, or by a general order establishing a rate. If no rate were settled, the court might act in a particular case, by an order making an allowance, according to some rate which should be adopted; and the effect

of such an order, would be, not only to make an allowance in the particular case, but also to settle a rate for other cases, as fully, as if such rate had been adopted and declared, in any other form.   Whether therefore, a rate is established by a general order, or by an order made in a particular case as the first instance of an allowance, it must be settled, with just regard to all the considerations which should have weight in the establishment of a regulation destined to govern all cases.   If the existing rule compensates no service excepting receipts and payments of money, the court might settle a rate for other services, if it were at liberty to establish several rates for different services.   But the court has no power to establish more rates than one.   If the existing rule is considered as making no allowance for many of the services of these trustees, it may be in that view, an imperfect execution of the statute ; but even in that view, as it is the only existing rate, it must govern all cases until another rate shall be established.   The rate settled for one service may, be inadequate for the compensation of all services ; but while one rate is in force, no other rate can exist.

1823.

McWhorter
v.
Benson.

The cou.
has no power
to establish
more rates of
allowance
than one.

The existing rule, interpreted with literal strictness, provides compensation for no service, excepting the receipt and payment of money ; but this is neither the spirit nor the effect of the regulation.   The plan of the statute, is compensation by a rate ; and some principle of proportion, must accordingly, be found.   The rule provides compensation for all the services of an executor administrator or guardian, by an allowance bearing proportion to the moneys which he has received and paid.   The moneys received and paid, are made the basis of a calculation, to ascertain the value of all his services ; and the result obtained by this calculation, is the reward, not only for receiving and paying money, but also for all other services in the trust.   It is one reward for all services ; and it is ascertained by a computation, founded on one species of service, which is described, not to reward that alone, but merely to give the principle of calculation.   The principle of proportion which constitutes a rate, is found in one species of service ; but the rate itself is, as by the statute it must be, a rate of allowance for all services.   The service selected as the basis

The intent
of the statute
is, to give one
reward for all
services, and
that reward
may be ascer-
tained by a
computation
upon one spe-
cies of service
only ; that
is, upon re-
ceiving and
paying mon-
ey.

1823.    of calculation, is one which in its nature, embraces most of the other services of an executor, administrator or guardian. When an estate is committed to the care of an executor or administrator, the conversion of the whole estate or parts of it, into money, the collection of debts due to the estate, the payment of debts from the estate, the payment of legacies or a residue of the estate, and the exertions made to effect these objects, are in ordinary cases, the most troublesome parts of his duty. Indeed, his services usually consist entirely, in these acts. A guardian receives the funds of his trust, and makes disbursements for his ward. When the executor administrator or guardian closes his trust, by paying to those entitled, the balance in his hands, his receipts and payments of money, are selected, as affording at once, a convenient measure and the best practical proof, of the extent and value of all his services. The existing rule is thus considered, as affording direct compensation for all services which produce or terminate in the receipt and payment of money : and in a more general view, this rule may be regarded as affording compensation for all services whatever, by adopting and declaring the only principle of compensation, which is eligible and just, under this law. The question whether the existing rule provides compensation, for receiving and paying money as particular services, or for all services by an allowance computed upon receipts and payments, must be decided, much more by the nature of the subject and the real effect of the regulation, than by any criticism upon the terms of the rule. I regard the rule, as providing an allowance for all services : but if it provides only for the services of receiving and paying money, the question how other services are to be compensated, must be resolved by the principles already advanced. If the only sound and safe principle of compensation under this statute, is that which makes the allowance depend upon the payments of the trustee, and if the existing rule does not give compensation for all services, another rate and a farther allowance might be necessary ; but such rate and such allowance must still be determined by the same principle, the payments of the trustee. Thus, a second rate and another allowance founded upon payments, would result ; and the real effect of considering the ex-

isting rate as providing compensation for no service excepting receipts and payments, is according to these views, to pronounce the existing rate too low and insufficient to produce compensation for all services.

I inquire not here, whether the rate of allowance which has been settled, is or is not, the rate best adapted to produce a just amount of compensation to guardians executors and administrators; either for receipts and payments of money, or for all their services. This rate may be too high or too low; or it may be a reasonable rate for receiving and paying money, and insufficient to afford compensation for other services; or it may be sufficient for all services. The rate intended by the statute, should be such as to produce, in its general operation, a reasonable amount of compensation to guardians executors and administrators, as an average for their services. Whether the existing rate is regarded, as a provision for all services, or as providing only for the receipt and payment of money; in either view, while this rate and no other, is in force, this operates, as the only provision for all services. The adjustment of a reasonable rate is a subject not before me. The question here, is, whether any allowance can be made, without regard to a rate. My purpose has been, to investigate the true sense of the statute; and I hold, that this law does not authorise any allowance to guardians executors or administrators, in the settlement of their accounts, otherwise than in conformity to an established rate.

In this case, the master having allowed for the services of the executor, a gross sum, not ascertained by any rate of allowance, the first exception to the report, is allowed: and it is now referred to the master, to state an account of the compensation to be allowed to Benson, by computing the allowance upon the moneys received and paid by him as executor, according to the existing rule.

The master having reported a gross sum, by way of allowance, it was disallowed by the court, and referred back